UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MARWA KHUDAYNAZAR,**<br>　　　Plaintiff,<br><br>v.<br><br>**CITY OF BOSTON, MICHELLE WU, and LUKE PAYNE,**<br>　　　Defendants. | C.A. No.　1:25-cv-12696-ADB |

**CITY DEFENDANTS' REPLY TO PLAINTIFF'S**
**CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

The City of Boston (the "City"), Mayor Michelle Wu ("Mayor Wu"), and Officer Luke Payne ("Officer Payne") (collectively the "City Defendants") reply to the Plaintiff's opposition to the City Defendants' Motions to Dismiss ("Plaintiff's opposition"). Doc No. 30. In brief, Plaintiff's opposition misstates the decision in *Bowman v. Monteiro*, No. 24-cv-10580, 2025 WL 2174871, (D. Mass. Jul. 31, 2025), improperly combines a defamation claim and an invasion of privacy claim, and mischaracterizes the evidence incorporated by reference into her Complaint.

**I.     ARGUMENT**

　　*a. The Plaintiff misstates the holding in Bowman v. Monteiro*

In Plaintiff's opposition to Officer Payne's Motion to Dismiss, she mischaracterizes *Bowman v. Monteiro* as holding that "[f]actual disputes are not resolved on a motion to dismiss, and the body-worn camera footage does not conclusively resolve that debate. Accordingly, the Court will deny the Motion to Dismiss…" *Bowman*, 2025 WL 2174871 at *5; Doc. No. 30 at p. 10. This quote is misleading. The Court was analyzing multiple claims *by considering* the body-worn camera:

1

> As a threshold question, this Court must determine if it can consider body-worn camera footage at this stage of the proceedings [a motion to dismiss]. In short, it can.

*Bowman*, 2025 WL 2174871 at *2. Notably, the Plaintiff actually references and relies on information from the body-worn camera in her opposition to the Motions to Dismiss. As such, the body-worn camera footage should be considered.

### b. *The Plaintiff improperly merges her Defamation and Invasion of Privacy claims*

The Plaintiff's defamation and invasion-of-privacy claims fail individually, as discussed in Mayor Wu's Motion to Dismiss. See Doc. No. 20 at pp. 7-11. The Plaintiff bases these claims on allegations that Mayor Wu "falsely reported to the press that the CITY terminated KUDAYNAZAR after internal investigation because KHUDAYNAZAR abused her position when she told police that she worked for CITY." See Doc. No. 30 at p. 17.

In her opposition, the Plaintiff argues that "because the defamation claim should survive, so too should count six for invasion of privacy." *Id*. at p. 18. This is incorrect.

To prove a defamation claim, the Plaintiff must show that:

(1) the defendant published an oral (slander) or written (libel) statement;

(2) the statement was about, and concerned, the plaintiff;

(3) the statement was defamatory;

(4) the statement was false; and

(5) the plaintiff suffered economic loss, or the claim is actionable without proof of economic loss.

*Noonan v. Staples, Inc*. 707 F. Supp. 2d 85, 89 (D. Mass 2010) (internal citations omitted).[1]

---

[1] As a public figure, Plaintiff must additionally point to sufficient evidence that Mayor Wu's alleged statement was published with "actual malice." *Murphy v. Boston Herald, Inc.,* 449 Mass. 42, 48 (2007). There is no such evidence here.

To prove her invasion of privacy claim, the Plaintiff must show that a defendant:

(1) disclosed facts about [the Plaintiff;]

(2) that are of a highly personal or intimate nature[;]

(3) when there exists no legitimate, countervailing interest[.]"[2]

*Spencer v. Roche*, 659 F.3d 142, 150 (1st Cir. 2011), quoting *Bratt v. Int'l Bus. Machines Corp.*, 392 Mass. 508 (1984) (internal citations omitted). The Plaintiff's opposition attempts to convert her invasion-of-privacy claim into a "false light" claim. Doc. No. 30, at p. 18. As the Plaintiff openly admits, Massachusetts "[c]ourts have avoided directly deciding whether false light claims are viable under G.L. c. 214, § 1B." Doc. No. 30, at p. 18 (citing *Jones v Taibbi*, 400 Mass. 786, 801-02 (1987); *Elm Med. Lab., Inc., v. RKO Gen. Inc.*, 403 Mass 779, 787 (1989)). The Plaintiff also concedes that a majority of privacy cases deal with dissemination of information – here, apparently, the police report. *Id.* But again, she openly admits that she cannot point to who disclosed or disseminated the police report, instead suggesting that since the media had it, the Defendants must have disclosed it. Doc. No. 8 at p. 12; *Complaint* at ¶28.

These claims are separate torts with separate elements, and the Plaintiff has provided no case law to support her suggestion that these claims are interrelated. A defamation claim is based on a *false statement*. See *Noonan,* 707 F. Supp. at 89. An invasion of privacy claim is based on *disclosure of fact.* See *Spencer*, 659 F.3d at 150. Not only are the two claims not interconnected, they directly contradict one another. Further, Plaintiff admits in her Complaint "that [on the] same day [May 15, 2025] … the media published the [police] report." Doc. No. 8 at p. 12; *Complaint* at

---

[2] For the sake of argument, the "countervailing interest" here is clear; making it clear that individuals cannot invoke their position within the City for favorable treatment is certainly a legitimate interest.

¶28. When facts are already in the public domain, there cannot be an invasion of privacy claim. See *Taylor v. Swartwout,* 445 F.Supp.2d 98, 103 (D.Mass.2006). Counts Six and Seven of Plaintiff's Complaint cannot survive, and should be dismissed.

### c. The Plaintiff mischaracterizes evidence

Finally, the Plaintiff alleges that she was never allowed to present her version of the events, that she was *not* fired for telling the police she worked for the City, and that she *was* fired for disclosing alleged philandering by Mr. Idowu. Doc. No. 30 at pp. 13, 15. This is simply not what the documents incorporated into the Plaintiff's Complaint show.

First, the City provided Plaintiff a hearing prior to her termination, see Doc. No. 8 at pp. 32, 34-35, and provided her with a document outlining her rights prior to that hearing. *Id.*, at p. 35. Plaintiff signed that form and stated that she was doing so "under duress." *Id.*, at p. 37. In her opposition, Plaintiff then proceeds to contradict her Complaint. She claims that she was not allowed to present her version of events of the night of her arrest, while at the same time her Complaint points to documents showing that the City did not ask questions about the May 15, 2025 incident *at the Plaintiff's request. Id.*, at p. 39. Further, it is clear that the City terminated the Plaintiff for two reasons; (1) invoking her position within the City for favorable treatment and (2) not being on an approved leave of absence. *Id.*, at pp. 39-41.

### I. CONCLUSION

WHEREFORE, for the reasons stated above, the City Defendants respectfully requests that this Honorable Court grant their motions to dismiss and grant such other and further relief as it deems just and proper.

Date: January 9, 2026

Respectfully submitted,

**DEFENDANTS,
CITY OF BOSTON, MAYOR WU, and
OFFICER LUKE PAYNE**

By their attorneys:

ADAM CEDERBAUM
Corporation Counsel

*/s/ Nicole E. Gemba*
Adam D. Johnson (BBO#679142)
Nicole E. Gemba (BBO#707216)
Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4097 (ADJ)
(617) 635-4048 (NEG)
adam.johnson@boston.gov
nicole.gemba@boston.gov

### Certificate of Service

I, Nicole E. Gemba, hereby certify that on January 9, 2026, a true and correct copy of this document filed through the ECF system will be sent by email to counsel for the plaintiff, Lucas Newbill.

*/s/ Nicole E. Gemba*
Nicole E. Gemba